**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ERIN ALBERTS, TIMOTHY ALBERTS, and MICHAEL PIETRANTONIO, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LOWE'S HOME CENTERS, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:13-cv-12259 |

**CLASS ACTION COMPLAINT**

Plaintiffs Erin Alberts, Timothy Alberts, and Michael Pietrantonio (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, bring this Class Action Complaint against Defendant Lowe's Home Center's, Inc. ("Defendant" or "Lowe's").  Plaintiffs, on their own behalf and on behalf of a class of similarly situated individuals, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**I.    NATURE OF THE ACTION**

1.    Mass. Gen Laws ch. 93 § 105(a) addresses and prevents the misuse and improper collection of personal identification information by retailers, and recognizes that there is no legitimate need to obtain such personal information from credit c ard customers except to the extent it is strictly necessary to complete the transaction.

2.    Specifically, Mass. Gen Laws ch. 93 § 105(a) states that:

> No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write,

> cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form. Personal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number.

3. This action arises from Lowe's violation of Mass. Gen Laws ch. 93 § 105(a) through its practice of requiring, as a condition of using a credit card to make a purchase, Plaintiffs' and the Class members' personal identification information, specifically their ZIP codes. This conduct constitutes violations of Mass. Gen Laws ch. 93A § 9.

4. Accordingly, Plaintiffs bring this action on behalf of the below-defined Class and seeks statutory damages pursuant to Mass. Gen Laws ch. 93A § 9, double or treble damages pursuant to Mass. Gen Laws ch. 93A § 9, injunctive relief; and costs and attorneys' fees.

## II.  JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than Lowe's respective states of citizenship.

6. This Court has personal jurisdiction over Lowe's because this action arises from Lowe's transaction of business in Massachusetts. This Court also has personal jurisdiction over Lowe's because, at all relevant times, Lowe's was registered to do business in the State of Massachusetts and is therefore subject to general jurisdiction in this State.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) and 1391(c) as Lowe's is deemed to reside in this District because it is subject to personal jurisdiction here; a substantial part of the events and/or omissions giving rise to the claims

emanated from activities within this District; and Lowe's conducts substantial business in this District.

### III.   PARTIES

*Plaintiffs*

8. Erin Alberts is a natural person and citizen of the State of Massachusetts.

9. Timothy Alberts is a natural person and citizen of the State of Massachusetts.

10. Michael Pietrantonio is a natural person and citizen of the State of Massachusetts.

*Defendant*

11. Lowe's is a corporation incorporated and existing under the laws of the State of North Carolina with its principal place of business located at 1606 Curtis Bridge Rd., Wilkesboro, North Carolina 28697. Lowe's conducts business throughout the United States and Massachusetts.  Pursuant to 28 U.S.C. 1332(c), Lowe's is a citizen of the State of North Carolina.

### IV.   FACTUAL BACKGROUND

*Lowe's Unlawful Collection of PII*

12. Plaintiff Erin Alberts purchased items at a Lowe's retail store location in Woburn, Massachusetts on June 24, 2011, August 13, 2012, and August 14, 2012.

13. Plaintiff Timothy Alberts purchased items at a Lowe's retail store location in Woburn, Massachusetts on April 7, 2012, August 12, 2012, August 14, 2012, August 16, 2012, August 17, 2012, and August 18, 2012.

14. Plaintiff Michael Pietrantonio purchased items at a Lowe's retail store location in Woburn, Massachusetts on December 8, 2009, April 5, 2010, September 24, 2010, March 13, 2011, and March 16, 2011; and in Danvers, Massachusetts on March 25, 2011.

15. To consummate each purchase, Plaintiffs used their credit cards as their chosen form of payment.

16. As a condition of using their credit cards, Plaintiffs were required by Lowe's to enter personal identification information associated with the credit card, including their full and complete zip code. Lowe's would not allow Plaintiffs to complete their purchases without supplying such information.

17. Lowe's is not required by credit card issuers to require this information from consumers.

18. Lowe's recorded Plaintiffs' zip code into an electronic credit card transaction form. Lowe's continues to store Plaintiffs' personal identification information, including Plaintiffs' name, zip code, and credit card number, in its databases.

19. The Supreme Judicial Court of Massachusetts has determined that a zip code constitutes personal identification information ("PII") within the meaning of Mass. Gen Laws ch. 93 § 105(a). *See Tyler v. Michaels Stores, Inc.*, 2013 Mass. LEXIS 40 (2013).

***Receipt of Unwanted Marketing Materials***

20. Subsequent to Plaintiffs' purchases at Lowe's – detailed above – Plaintiffs received unwanted marketing materials from Lowe's via United States Mail.

***Lowe's Sells Consumers' PII for profit***

21. Lowe's website states that Lowe's sells consumers' PII – including Plaintiffs' and the Class' PII – to third-parties for profit:

> We also may share your information among our affiliates, joint marketing partners and companies that fulfill orders placed with us, who may send you marketing information.[1]

### *Consumers Place a High Value on Their PII*

22. At a Federal Trade Commission ("FTC") public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[2]

23. Though Commissioner Swindle's remarks are more than a decade old, they are even more relevant today, as consumers' personal data functions as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.[3]

24. The FTC has also recognized that consumer data is a new – and valuable – form of currency. In a recent FTC roundtable presentation, another former Commissioner, Pamela Jones Harbour, underscored this point by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be

---

[1] *Lowe's Privacy Statement*,
http://www.Lowe's.com/cd_Privacy+and+Security+Statement_137461171_#Sharing of Information (last visited Aug. 24, 2013).

[2] *The Information Marketplace: Merging and Exchanging Consumer Data*,
http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited May 20, 2012).

[3] *See Web's Hot New Commodity: Privacy*,
http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

commercially valuable. Data is currency. The larger the data set, the greater potential for analysis – and profit.[4]

25.     Recognizing the high value that consumers place on their PII, many companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information that they share – and who ultimately receives that information. By making the transaction transparent, consumers will make a profit from the surrender of their PII.[5] This business has created a new market for the sale and purchase of this valuable data.[6]

26.     In fact, consumers not only place a high value on their PII, but also place a high value on the *privacy* of this data. Thus, the question is not *whether* consumers value such privacy; the question is "*how much* [consumers] value" that privacy.[7]

27.     Researchers have already begun to shed light on the considerable value consumers place on the privacy of their data. Studies confirm that "when [retailers'] privacy

---

[4] *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable), http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited May 20, 2012).

[5] *You Want My Personal Data? Reward Me for It*, http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited May 20, 2012).

[6] *See Web's Hot New Commodity: Privacy*, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited May 20, 2012).

[7] Hann *et al.*, *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at 2, *available at* http://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (emphasis added) (last visited April 25, 2012).

information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[8]

28. Consumers thus value their personal data highly, and place an economic value on the privacy of that data. In fact, when consumers were surveyed as to how much they valued their personal data in terms of its protection against improper access and unauthorized secondary use, they valued 1) the restriction of improper access to their data at between $11.33 and $16.58 per website, and 2) prohibiting secondary use to between $7.98 and $11.68 per website.[9]

## V.    CLASS ACTION ALLEGATIONS

29. Plaintiffs bring Count I, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as

> All persons from whom Lowe's requested and recorded personal identification information in conjunction with a credit card transaction occurring in Massachusetts (the "Class").

Excluded from the Class are Lowe's and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

30. Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

31. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the class are so numerous that individual joinder of all Class members is impracticable. On

---

[8] Tsai, Cranor, Acquisti, and Egelman, *The Effect of Online Privacy Information on Purchasing Behavior*, 22(2) Information Systems Research 254, 254 (June 2011).

[9] *Id.*

-7-

information and belief, there are thousands of consumers who have been affected by Lowe's wrongful conduct. The precise number of the Class members and their addresses is presently unknown to Plaintiffs, but may be ascertained from Lowe's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

32.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. whether Lowe's engaged in the conduct as alleged herein;

   b. whether Lowe's conduct constitutes violations of Mass. Gen Laws ch. 93 § 105(a) and Mass. Gen Laws ch. 93A § 9;

   c. whether Plaintiffs and the other Class members are entitled to statutory, or other forms of damages, and other monetary relief and, if so, in what amount(s); and

   d. whether Plaintiffs and other Class members are entitled to equitable relief, including but not limited to injunctive relief and restitution.

33.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform misconduct described above.

34.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel

competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

35. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Lowe's has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

36. **Superiority – Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Lowe's, so it would be impracticable for Class members to individually seek redress from Lowe's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I
**Violation of Massachusetts Unfair Trade Practices Act**
**Mass. Gen. Laws ch. 93A**
**(On behalf of Plaintiffs and the Class)**

37. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

38. Mass. Gen Laws ch. 93 § 105(a) provides:

> No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form. Personal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number.

39. Lowe's is a corporation that accepts credit cards for retail transactions.

40. Through the practices detailed above, Lowe's has violated, and continues to violate, Mass. Gen Laws ch. 93 § 105.

41. Mass. Gen. Laws ch. 93 § 105(c) provides that: "Any violation of the provisions of this chapter shall be deemed to be an unfair and deceptive trade practice, as defined in section 2 of chapter 93A."

42. Accordingly, Lowe's violations of Mass. Gen Laws ch. 93 § 105 constitute unfair and deceptive trade practices within the meaning of Mass. Gen Laws ch. 93A § 2.

43. Mass. Gen Laws ch. 93A § 9 provides:

> Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper …. Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons.

44. Plaintiffs and the members of the Class have been injured by Lowe's collection of their zip codes in connection with their credit card transactions and resultant violations of Mass. Gen Laws ch. 93A § 9.

45. First, Plaintiffs and the Class have been injured because they have received unwanted marketing materials from Lowe's as a result of having provided their zip codes when

using credit cards at Lowe's. <u>Second</u>, Plaintiffs and the Class have been injured by Lowe's sale of Plaintiffs' and the Class' PII to third-parties, which was collected by Lowe's in violation of Mass. Gen. Laws ch. 93 § 105(c). And <u>third</u>, Plaintiffs and the Class have been injured because Lowe's misappropriated their economically valuable PII without consideration.

46. More than 30 days prior to filing suit, Plaintiffs made a pre-suit demand pursuant to Mass. Gen Laws ch. 93A § 9(3) (the "93A Demand"), in which Plaintiffs sought: class-wide relief limited to statutory damages of $25 pursuant to Mass. Gen Laws ch. 93A § 9, for each violation of Mass. Gen Laws ch. 93 § 105; injunctive relief; and reasonable attorneys' fees and costs. Lowe's did not accept the terms of this demand. A true and correct copy of the 93A Demand is attached here as Exhibit A.

47. Lowe's failure to accept the terms of this demand was made in bad faith, because Lowe's has knowledge or reason to know that the practice complained of does, in fact, violate Mass. Gen Laws ch. 93 § 105 and Mass. Gen Laws ch. 93A § 9, and that Plaintiffs and the Class are entitled to the relief demanded as a matter of law.

48. Accordingly, Plaintiffs and the Class are entitled to double or treble damages as a result of Lowe's bad faith violations of Mass. Gen Laws ch. 93A § 9.

## VII. <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the Class, request that the Court enter an order and judgment in her favor and against Lowe's as follows:

a. Certification of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3);

b. Designation of Plaintiffs as representative of the propose Class and designation of Plaintiffs' counsel as Class Counsel;

c. Declaration that Defendant's actions, as described herein, violate Mass. Gen Laws ch. 93 § 105 and Mass. Gen Laws ch. 93A § 9;

    d.  Awarding statutory damages of $25 pursuant to Mass. Gen Laws ch. 93A § 9, for each violation of Mass. Gen Laws ch. 93 § 105;

    e.  Doubling or trebling damages pursuant to Mass. Gen Laws ch. 93A § 9;

    f.  Enjoining Defendant's continued violations of Mass. Gen Laws ch. 93 § 105, pursuant to Mass. Gen Laws ch. 93A § 9;

    g.  Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

    h.  Awarding Plaintiffs and the Class pre- and post-judgment interest; and

    i.  Such other and further relief as may be just and proper.

Dated: September 12, 2013            Respectfully submitted,

ERIN ALBERTS, TIMOTHY ALBERTS, and MICHAEL PIETRANTONIO, on behalf of themselves and all others similarly situated

By: _____
    One of the Attorneys for Plaintiffs
    And the Proposed Putative Classes

Joseph J. Siprut*
*jsiprut@siprut.com*
**SIPRUT PC**
17 North State Street, Suite 1600
Chicago, Illinois  60602
Tel:  312.236.0000
Fax:  312.948.9196


Alexander Shapoval
*ashapoval@siprut.com*
**SIPRUT PC**
1 Winnisimmet Street
Chelsea, MA 02150
Tel: 617.889.5800
Fax: 617.884.3005

* *Pro Hac Vice* application to be submitted

4839-6777-6788, v. 1